UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| ASHLEY M. ROHDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:17-CV-225-TLS |
| | ) | |
| FAMILY DOLLAR STORES | ) | |
| OF INDIANA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion to Dismiss, or in the Alternative to Stay, and to Compel Arbitration [ECF No. 15]. Ashley M. Rohde, a Plaintiff proceeding pro se, has sued her former employer, the Defendant, Family Dollar Stores of Indiana, LLC, for discrimination under the Americans with Disabilities Act (ADA) and retaliation for asserting a right to benefits under the Indiana Workers Compensation Act. The Defendant requests that the Court dismiss all claims against the Defendant or, in the alternative, stay this action pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., and Rule 12 of the Federal Rules of Civil Procedure, and compel the parties to pursue arbitration. For the reasons stated herein, the Court dismisses the Plaintiff's Complaint [ECF No. 1].

**STANDARD OF REVIEW**

The burden to avoid compelled arbitration is analogous to that required to successfully oppose summary judgment under Rule 56. *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002). That is, "the opposing party must demonstrate that a genuine issue of material fact

warranting a trial exists." *Id.* "Just as in summary judgment proceedings, a party cannot avoid compelled arbitration by generally denying the facts upon which the right to arbitration rests; the party must identify specific evidence in the record demonstrating a material factual dispute for trial." *Id.* The Court also notes that the summary judgment standard is appropriate because the Defendant has presented matters outside the pleadings in support of their Motion to Dismiss. *See* Fed. R. Civ. P. 12(d).

## STATEMENT OF FACTS

The Defendant maintains that the parties entered into an arbitration agreement (Arbitration Agreement) to arbitrate all claims arising out of or related to the Plaintiff's employment at Family Dollar.

### A. The Plaintiff's Employment with Family Dollar

The Plaintiff was an employee of the Defendant, located in Fort Wayne, Indiana. (Neeley Decl. ¶ 8, ECF No. 17-1.) The Plaintiff accepted employment with the Defendant on August 5, 2015, at which time she completed her onboarding process. (*Id.* ¶¶ 8, 19.) The Defendant uses an electronic onboarding system called "Taleo" through which the Defendant presents onboarding materials to new hires and maintains records of employees' receipt, review, and acknowledgment of all materials presented through this system. (*Id.* ¶¶ 7–8, 19.)

**B.     The Arbitration Agreement**

Through the onboarding process, the Plaintiff received a written offer of employment with the Defendant on August 5, 2015. (*Id.* ¶ 6, Ex. A.) The offer letter informed the Plaintiff that executing the Family Dollar Mutual Agreement to Arbitrate Claims (the "Arbitration Agreement")[1] was a condition of employment with Family Dollar, stating specifically:

> Additionally, as a condition of employment with Family Dollar, you will be subject to and requested to execute a Mutual Agreement to Arbitrate Claims, which will require that both you and Family Dollar agree to arbitrate covered disputes, including without limitation, disputes arising out of or in connection with the employment relationship.

(*Id.*) The Plaintiff accepted employment with Family Dollar when she electronically signed the offer letter on August 5, 2015. (*Id.* at ¶ 19, Ex. A, Ex. C.)

The parties engaged in a standard set of procedures for the onboarding. The Plaintiff created her own unique username and password when using Taleo, accepting the offer letter, and navigating the onboarding documents. (*Id.* ¶¶ 10–19, Ex. A, Ex. B, Ex. C.) The Plaintiff was prompted to click on a link titled "Open Door/Arbitration Memo." (*Id.* ¶ 11, Ex. B.) After clicking on the link, she was taken to an electronic letter from the Defendant regarding the "Open Door Communication Guidelines/Mutual Agreement to Arbitrate Claims." (*Id.* ¶ 12, Ex. B at 1.) This letter provided the Plaintiff with a summary of the Defendant's "Open Door Guidelines" and explicitly informed her that she and the Defendant are subject to a binding arbitration agreement, requiring both her and Family Dollar to submit all covered employment-related disputes to arbitration. (*Id.*) Specifically, the letter stated:

> The Arbitration Agreement is a stand-alone and binding agreement that will apply company-wide. We truly hope that you and Family Dollar will not have legal

---

[1] The Arbitration Agreement is filed as part of Exhibit B of the Neely Declaration.

3

> disputes in connection with you employment, and if such disputes do arise, we hope that they can be resolved informally through the Open Door Policy. However, if an employment-related dispute cannot be resolved, or should you or Family Dollar decide at any time to pursue covered employment-related legal disputes against the other, such disputes must be resolved individually in arbitration—not by way of a judge or jury. The Arbitration Agreement requires both you and Family Dollar to arbitrate covered disputes, as defined in the Arbitration Agreement, before a private and neutral third-party chosen by the Team Member and Family Dollar.

(*Id.* Ex. B at 1.) The letter also provided the Plaintiff with multiple company contacts in the event she had any questions or concerns about the Open Door Guidelines or the Arbitration Agreement. (*Id.*¶ 12, Ex. B at 1.)

After reviewing the above electronic letter, the Plaintiff proceeded to the Open Door Guidelines. (*Id.* ¶ 14, Ex. B at 2.) After reviewing these Open Door Guidelines, she once again clicked the "Continue" link, at which point she was provided with a complete electronic version of the Arbitration Agreement. (*Id.* at ¶ 14, Ex. B 3–7.) At the conclusion of the Arbitration Agreement, the Plaintiff was advised in all bold-faced caps in the space directly above the box for their electronic signature as follows:

> **BY SIGNING BELOW, I ACKNOWLEDGE THAT I HAVE CAREFULLY READ AND UNDERSTAND THIS AGREEMENT AND AGREE TO ITS TERMS. I AGREE THAT THROUGH THIS AGREEMENT, THE COMPANY AND I ARE GIVING UP OUR RIGHTS TO A JURY TRIAL AND THAT PURSUANT TO THE TERMS OF THIS AGREEMENT; WE ARE AGREEING TO ARBITRATE DISPUTES COVERED BY THIS AGREEMENT.**

(*Id.* at ¶ 15, Ex. B at 7.) The Plaintiff electronically signed the Arbitration Agreement by entering the last four digits of her social security number in the box provided as her signature. (*Id.* ¶ 16, Ex. B at 7.) The Plaintiff then proceeded to a page requesting that she confirm her personal email address or provide a new personal email address for receipt of an electronic copy of the Arbitration Agreement. (*Id.* ¶ 17, Ex. B at 8.) When she electronically signed the Arbitration

Agreement, the Taleo system automatically updated itself to reflect her receipt and acceptance of the Arbitration Agreement. (*Id.* ¶ 18, Ex. B at 8.) A copy of the Arbitration Agreement was also sent to her personal email address. (*Id.*)

The Defendant maintains records in the regular course of business showing the dates that associates electronically signed and acknowledged receipt of the Arbitration Agreement. (*Id.* ¶ 19, Ex. C.) The Defendant's records show that the Plaintiff completed her electronic signature and acknowledgment for the Arbitration Agreement on August 5, 2015. (*Id.*)

### C. Claims Covered by the Arbitration Agreement

In the Arbitration Agreement, the parties agreed to arbitrate all claims arising out of or related to an Associate's employment or termination, including claims of discrimination, retaliation, or wrongful discharge:

> **DISPUTES COVERED BY THE AGREEMENT:** The Company and I mutually consent and agree to the resolution by arbitration of all claims or controversies, past, present or future ("Disputes"), including without limitation, claims arising out of or related to my application for assignment/employment, assignment/employment, and/or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, . . . (3) the Company's parent, subsidiary, and affiliated entities, . . . .

(*Id.* Ex. B at 3.) The Arbitration Agreement itself states that any disputes regarding the applicability of the Arbitration Agreement are to be decided by the arbitrator, and not by a court:

> Further, covered Disputes include any claim or controversy regarding the Agreement or any portion of the Agreement or its interpretation, enforceability, applicability, unconscionability, arbitrability or formation, or whether the Agreement or any portion of the Agreement is void or voidable, with the exception noted in section 7, below, the "Class Action Waiver."

(*Id.*) The Arbitration Agreement specifies the Federal Arbitration Act (the FAA) as the governing law. It provides that the parties may mutually select an arbitrator and, if they are unable to mutually select an arbitrator, the selection process under the Employment Arbitration Rules of the American Arbitration Association will apply. (*Id.* Ex. B. at 4.) The Arbitration Agreement sets forth that the Defendant shall pay the fees and costs of the arbitrator. (*Id.* Ex. B. at 6.)

The Arbitration Agreement further states:

> **CONSIDERATION:** I and the Company agree that the mutual obligations by the Company and me to arbitrate Disputes, and my employment and/or continued employment, and the Company's payment of fees and costs of the arbitrator and/or that are assessed by the organization through which the arbitration is conducted (including my filing fee) provide adequate consideration for this Agreement.

(*Id.* Ex. B. at 7.)

## ANALYSIS

The FAA applies to employment agreements. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). Whether parties are contractually bound to arbitrate and what issues they are bound to arbitrate are matters to be determined by the Court. *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 296 (2010); *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, 651 (1986) (stating that "[i]t is the court's duty to interpret [an] agreement and to determine whether the parties intended to arbitrate"); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005). Although the FAA "'favors resolution of disputes through arbitration, its provisions are not to be construed so broadly as to include claims that were never intended for arbitration.'" *Cont'l Cas. Co.*, 417 F.3d at 730 (quoting *Am. United Logistics, Inc. v.*

6

*Catellus Dev. Corp.*, 319 F.3d 921, 929 (7th Cir. 2003)). The parties must have agreed in advance to submit the disputes to arbitration because the arbitration agreement is the source of the arbitrator's authority to resolve those disputes, and a party may not be forced to arbitrate any dispute that the party did not agree to arbitrate. *AT&T Techs.*, 475 U.S. at 648–49. Courts must be mindful that the FAA "'is a congressional declaration of a liberal federal policy favoring arbitration agreements' and 'that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Cont'l Cas. Co.*, 417 F.3d at 730–31 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983)).

"Under the [FAA], arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 690 (7th Cir. 2005). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Courts must order arbitration of claims "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Techs.*, 475 U.S. at 650.

Federal courts rely on state contract law to determine whether an arbitration agreement constitutes a valid contract. *See First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 809 (7th Cir. 2011). "Indiana courts apply ordinary contract principles to arbitration agreements." *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997). Thus, like other contracts, arbitration

7

agreements may be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996).

The undisputed facts show that the parties entered into a valid agreement to arbitrate employment disputes. *See Straub v. B.M.T. by Todd*, 645 N.E.2d 597, 598 (Ind. 1995) (setting forth the traditional contract elements of an offer, acceptance, and consideration). The Plaintiff accepted the Defendant's offer to arbitrate all disputes she had with her employer when she did not exercise her right to opt out of the Arbitration Agreement. *See Johnson v. Harvest Mgmt. Sub TRS Corp.—Holiday Ret.*, No. 3:15-CV-26-RLY-WGH, 2015 WL 5692567, at *4 (S.D. Ind. Sept. 25, 2015) (stating that assent may be expressed by acts that manifest acceptance, including not opting out of an arbitration agreement that contains an opt-out provision) (citing *Nationwide Ins. Co. v. Heck*, 873 N.E.2d 190, 196 (Ind. Ct. App. 2007)); *see also Versmesse v. AT&T Mobility LLC*, No. 3:13-CV-171, 2014 WL 856447 (N.D. Ind. Mar. 4, 2014).

Here, assent of the Arbitration Agreement was a condition of employment, and the Plaintiff assented when she electronically signed it. Moreover, the Arbitration Agreement states:

> **CONSIDERATION:** I and the Company agree that the mutual obligations by the Company and me to arbitrate Disputes, and my employment and/or continued employment, and the Company's payment of fees and costs of the arbitrator and/or that are assessed by the organization through which the arbitration is conducted (including my filing fee) provide adequate consideration for this Agreement.

(Neely Decl., Ex. B ¶ 14.) Courts have recognized that "a mutual promise to arbitrate future disputes constitutes consideration." *Johnson*, 2015 WL 5692567, at *4; *see also Michalski v. Circuit City Stores, Inc.*, 177 F.3d 634, 636 (7th Cir. 1999) (holding that an employer's "promise to be bound by the arbitration process itself serves as mutual consideration"); *Nuzzi v. Coachmen Indus., Inc.*, No. 3:09-CV-116, 2009 WL 3851364, at *5 (N.D. Ind. Nov. 16, 2009) (noting that

8

consideration exists where "the employer is willing to give up its own legal right to defend itself in court, and submit its defense to arbitration"); *Jenks v. Workman*, No. IP99-1389, 2000 WL 962821, at *5 (S.D. Ind. June 22, 2000).

The Plaintiff argues that she lacks memory of having executed the Agreement. But assertions by parties that "they 'do not recall' signing an arbitration agreement," without more, "are insufficient to challenge the existence of the agreements." *Victorio v. Sammy's Fishbox Realty Co., LLC*, No. 14-CV-8678, 2015 WL 2152703, at *11 (S.D.N.Y. May 6, 2015); *see also Padro v. Citibank, N.A.*, No. 14-CV-2986, 2015 WL 1802132, at *5 (E.D.N.Y. Apr. 20, 2015) ("[I]t is not relevant, for purposes of [a motion to compel arbitration], whether Plaintiff recalls signing documents acknowledging the Employment Arbitration Policy, or whether she subjectively understood at the time the contents thereof."). The Plaintiff's allegation that she does not recall signing the Agreement is insufficient to challenge the formation of the Agreement, as the Defendant has documented the Plaintiff's electronic acceptance of the Agreement. Also, the Plaintiff does not raise any dispute that the delegation clause in the Agreement requires that all disputes related to the Agreement's formation must be resolved through arbitration.

The claims raised in the Plaintiffs' Amended Complaint—discrimination under the ADA and retaliation for seeking worker's compensation benefits—fall within the scope of the Arbitration Agreement. The Plaintiff, by filing the Complaint, has demonstrated a refusal to arbitrate her claims. Because the parties have contracted for the process set forth in the Arbitration Agreement to be the sole avenue of redress for the Plaintiff's employment

9

discrimination claims, her claims cannot proceed in this Court but must be resolved through arbitration.

## CONCLUSION

For the foregoing reasons, the Defendant's Motion [ECF No. 15] is GRANTED. Because all of the issues raised in the Amended Complaint must be submitted to arbitration, it is DISMISSED WITHOUT PREJUDICE.

SO ORDERED on November 13, 2017.

s/ Theresa L. Springmann  
CHIEF JUDGE THERESA L. SPRINGMANN  
UNITED STATES DISTRICT COURT